**Jubilee Legal**
Daniel "Sparky" Abraham (SBN 299193)
300 E. Esplanade Dr., 9th Floor
Oxnard, CA 93036
Telephone: (805) 946-0386
sparky@jubilee.legal

**Aurora Legal**
P. Solange Hilfinger-Pardo (SBN 320055)
1900 Powell St, Suite 700
Emeryville, CA 94608
Telephone: (510) 224-5052
sol@auroralegalservices.com

Attorneys for Plaintiff CHRISTOPHER ALBANESE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ALBANESE,<br><br>Plaintiff,<br><br>vs.<br><br>NAVIENT CORPORATION; NAVIENT SOLUTIONS, LLC; HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI DBA MOHELA,<br><br>Defendants. | Case No. **8:25-cv-02579-DOC-JDE**<br><br>**FIRST AMENDED COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF FOR VIOLATIONS OF:**<br><br>I.   **THE STUDENT BORROWER BILL OF RIGHTS (CIVIL CODE § 1788.100, *ET SEQ.*);**<br>II.   **THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CIVIL CODE § 1788 *ET SEQ.*);**<br>III.   **THE CONSUMER CREDIT REPORTING AGENCIES ACT (CIVIL CODE § 1785.1 *ET SEQ.*);** |

First Amended Complaint

IV. **THE UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE § 17200 *ET SEQ.*);**

V. **DECLARATORY JUDGMENT (CIVIL CODE § 1060).**

Unlimited Civil Case

JURY TRIAL DEMANDED

**[Remainder of page left blank]**

Plaintiff CHRISTOPHER ALBANESE ("Plaintiff" or "Mr. Albanese"), by his attorneys, brings this action for violations of the Student Loan Borrower Bill of Rights, the Rosenthal Fair Debt Collection Practices Act, the Consumer Credit Reporting Agencies Act, the Unfair Competition Law, and for Declaratory Relief. Defendants NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC (together, "Navient"), and HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI DBA MOHELA ("MOHELA"), have engaged in numerous unfair, deceptive, and abusive collection tactics in the course of insisting that Mr. Albanese make payments on private subprime student loans that Navient and MOHELA know were induced through fraud. Although they claim to the general public to have a good faith process for evaluating claims of school fraud, in fact Navient and MOHELA conduct these evaluations using secret, arbitrary, and legally irrelevant criteria. In addition, Navient and MOHELA engage in abusive and unlawful debt collection tactics. Mr. Albanese alleges on personal information and upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, as follows:

## INTRODUCTION

1.  Art Institute of California – Orange County ("Art Institute" or "AIOC") lied to and misled Mr. Albanese, while pushing him to borrow tens of thousands of dollars for tuition and fees. During the blitz recruitment process, AIOC lied about, among other things, Mr. Albanese's job prospects, the academic quality of AIOC's programs, the careers services and internships available to Mr. Albanese, and the housing provided by AIOC. "You'd probe to find a weakness, you basically take all that failure and all those bad decisions,

First Amended Complaint

and you spin it around and put it right back in their face as guilt, to go to this s***ty university and run up all of this debt."[1]

2. Once Mr. Albanese was misled into enrolling in the program in 2005, AIOC quickly steered him to Sallie Mae, where he was further misled about the types of loans available to him. He was pushed to take out largely high-interest rate private loans to pay for exorbitant AIOC housing, tuition, costs and fees.

3. Since originating these predatory loans, Sallie Mae spun off its student loan operation to its successor Navient. Navient is well aware of the ways in which AIOC lied to students like Mr. Albanese in order to get them to take out these types of loan. Navient now owns Mr. Albanese's alleged private student loans and recently transferred servicing rights to MOHELA.

4. Mr. Albanese's federal student loans (incurred through the same lies and misrepresentations) have all been cancelled based on the Department of Education's findings that "[The Art Institutes'] pervasive and widespread substantial misrepresentations . . . likely would have negatively affected all or nearly all students who enrolled on or after Jan. 1, 2004, through Oct. 16, 2017."[2]

5. Yet, over 17 years later Mr. Albanese is still paying off the private student loans induced by this fraud that have ballooned to multiple times the amount originally disbursed.

---

[1] Hingston, Sandy, "Cracks in the For-Profit College Shell Game," *Philadelphia Magazine* (November 7, 2011), *available at* https://www.phillymag.com/the_philly_post/2011/11/07/cracks-for-profit-college-shell-game/ (last accessed Dec. 8, 2025).

[2] U.S. Department of Education, The Art Institutes Borrower Defense Executive Summary, *available at* https://studentaid.gov/sites/default/files/art-institutes-executive-summary.pdf (last visited Oct. 2, 2025).

First Amended Complaint

6.    Instead of acknowledging that this debt was induced through fraud and should have been discharged, Navient and MOHELA have insisted that Mr. Albanese continue to pay it, happy to keep collecting payments and fees from former students like Mr. Albanese.

7.    Navient and MOHELA have each committed a bevy of student loan servicing violations in the interim, including failing to acknowledge Mr. Albanese's disputes, failing to respond to notices of error and qualified requests, and failing to provide requested documents.

8.    At the same time, Navient and MOHELA have harassed Mr. Albanese about the alleged debt, including calling multiple times a day for days on end.

9.    Not satisfied only to harass Mr. Albanese, Navient and MOHELA have called third parties including Mr. Albanese's family members about the debt they allege he owes in blatant violation of consumer protection laws. Navient even left a voicemail for Mr. Albanese's minor niece in an attempt to collect from him.

10.    Throughout this time, Navient and MOHELA have reported the loans on Mr. Albanese's credit reports with no indication that they were induced through fraud, or even indicating that Mr. Albanese disputes the loans. There is a code that Navient and MOHELA could include in their credit reporting about Mr. Albanese to indicate that he disputes the validity of the loans. However, despite both Navient and MOHELA receiving multiple written disputes from Mr. Albanese, neither marked the loans disputed on his credit. Reporting these highly-disputed loans as undisputed is inaccurate, incomplete, and likely to mislead a credit grantor relating to Mr. Albanese's creditworthiness.

11.    As a result of the alleged private student loans reported on his credit

5

First Amended Complaint

without context, and without any indication that they are disputed, Mr. Albanese has been unable to secure credit on favorable terms.

12. Mr. Albanese brings this action for damages, injunctive relief, and declaratory relief.

13. Mr. Albanese brings this action seeking a public injunction to enjoin Navient and MOHELA from engaging in the unfair student loan servicing conduct alleged herein as to the general public, including those who might have student loans serviced by Navient and/or MOHELA in the future. Specifically, Mr. Albanese seeks a public injunction which would, *inter alia*, require that Navient and MOHELA conduct good faith evaluations of borrower claims of school misconduct, that Navient and MOHELA implement policies and procedures to ensure that they provide timely and complete responses to borrower qualified written requests for information and notices of error under to the Student Borrower Bill of Rights, and that Navient and MOHELA implement policies and procedures to prevent harassing and abusive telephone calls as well as unlawful debt collection contacts with third parties.

14. Since Navient and MOHELA falsely represent to the general public— including public agencies and regulators such as the Department of Financial Protection and Innovation—that they conduct a fair and non-arbitrary process when borrowers allege school misconduct, and that they generally comply with student loan servicing and debt collection laws, such an injunction would further benefit the general public by ensuring effective and efficient use of public regulatory resources.

15. Additionally, Navient and MOHELA's inaccurate and incomplete consumer reporting on Mr. Albanese's and others' alleged private student loans while failing to place the appropriate dispute flags on these loans

First Amended Complaint

harms credit markets. Navient and MOHELA furnish credit information to credit reporting agencies that make that information available to potential creditors, employers, and landlords. For credit markets to properly function and meaningfully allocate risks, the information furnished must be complete and accurate. It is not complete or accurate for Navient and MOHELA to furnish information for future publication on alleged loans like Mr. Albanese's that indicate that the debts are valid and undisputed. By enjoining such conduct, the general public would benefit from a fair and accurate credit market.

16. Mr. Albanese **does not** seek to hold Navient or MOHELA liable for the fraud committed by AIOC. Rather, he seeks relief to address Navient's and MOHELA's **current and ongoing unlawful servicing and collection practices** from which he has suffered harm, including the following:

*Servicing and collection violations not related to school misconduct*

- o Making unreasonable and abusive numbers of phone calls to Mr. Albanese for the purpose of harassing and annoying him;
- o Making collection calls to third parties about Mr. Albanese not for the narrow purpose of obtaining current contact information for him;
- o Failing to respond to qualified requests from Mr. Albanese and repeated refusal to provide basic information including the identity of the owner of the loans;
- o Refusal to mark loans disputed on Mr. Albanese's credit reports despite receiving multiple direct and good faith disputes from Mr. Albanese;

*Servicing and collection violations related to school misconduct*

- o Misrepresentations to Mr. Albanese concerning school misconduct, including that fraud committed by his school has no affect on his

liability for the loans;

- o Offering Mr. Albanese a "School Misconduct Discharge Application" and then denying the application in bad faith despite well-documented fraud confirmed by the U.S. Department of Education.

17. In addition, Mr. Albanese seeks to assert not a *claim* of fraud relating to conduct by AIOC, but a *defense* to future collection of the loans based on AIOC's misconduct via Declaratory Judgment. That is, were Navient or MOHELA to sue Mr. Albanese for these loans, he would assert a defense (via the FTC Holder Rule) based on AIOC's well-documented fraud. To date, Navient and MOHELA have only threatened to sue him, but have not sued him yet. As such, there is a present live controversy between the parties as to whether the loans are enforceable. Mr. Albanese seeks Declaratory Judgment, which has well-established availability for defensive use against anticipated claims.

## PARTIES

18. Plaintiff Christopher Albanese is an individual who at all material times was, and currently is, a resident of Orange County, California. Mr. Albanese is a "debtor" as that term is defined in California Civil Code § 1788.2(h), a "borrower" as that term is defined in Civil Code § 1788.100(a), and a "consumer" as that term is defined in Civil Code § 1785.3(b).

19. Defendant NAVIENT SOLUTIONS, LLC is a Delaware limited liability company and a wholly-owned subsidiary of Navient Corporation, with its principal executive offices located at 13865 Sunrise Valley Drive, Herndon, VA 20171.

20. Defendant NAVIENT CORPORATION is a Delaware corporation with its principal executive offices located at 123 Justison Street, Wilmington, DE

First Amended Complaint

19801. On information and belief, Navient Corporation does business as Navient at the same business address listed above. On information and belief, Navient Corporation owns the unknown Navient entity or entities that own Mr. Albanese's loans, but Mr. Albanese does not know the identity of those entities.

21. Both Navient defendants are a "debt collectors" as that term is defined in California Civil Code § 1788.2(c), "student loan servicers" as that term is defined in Civil Code § 1788.100(s), and "persons" who "furnished information on a specific transaction or experience to any consumer credit reporting agency" under Civil Code §§ 1785.3(j) and 1785.25.

22. On information and belief, significant overlap exists between the corporate governance and management of Navient Corporation and Navient Solutions, LLC. Further, on information and belief, significant business decisions relating to the policies and practices of Navient Solutions, LLC, are made by Navient Corporation. Herein, Navient Corporation and Navient Solutions, LLC, shall be referred to together as "Navient."

23. Defendant Higher Education Loan Authority of the State of Missouri is a non-profit corporation created by the State of Missouri with its principal offices located in Chesterfield, Missouri, and operating in California as MOHELA. MOHELA is a "debt collector" as that term is defined in California Civil Code § 1788.2(c), a "student loan servicer" as that term is defined in Civil Code § 1788.100(s), and a "person" who "furnished information on a specific transaction or experience to any consumer credit reporting agency" under Civil Code §§ 1785.3(j) and 1785.25.

24. Mr. Albanese does not know the identity of the current creditor(s) for the loans. Although Mr. Albanese has requested this information of Navient and MOHELA, and although Navient and MOHELA are required to

First Amended Complaint

provide this information upon request, they have failed to provide it. Mr. Albanese is informed and believes the creditor(s) are wholly-owned entities within Navient Corporation, separate and apart from Navient Solutions, LLC. Mr. Albanese reserves his right to add the current creditor(s) as defendant(s).

## AGENCY AND ALTER EGO

25. At all times mentioned herein each Defendant, whether actually or fictitiously named herein, was the principal, agent (actual or ostensible), or employee of each other Defendant and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

## JURISDICTION AND VENUE[3]

26. Venue is proper in Orange County Superior Court pursuant to California Code of Civil Procedure §§ 393 and 395.5 because one or more of the violations alleged in this Complaint arise in the Orange County. Venue is also proper in the Orange County Superior Court pursuant to Code of Civil Procedure § 395(b) because this action arises from an alleged extension of credit for personal, family, or household use and Mr. Albanese (the alleged borrower) resided in Orange County at the commencement of this action.

27. The Superior Court of the State of California has jurisdiction over Mr. Albanese's claims because Mr. Albanese is a resident of California, because Defendants regularly conduct business in California, and because the acts and omissions complained of occurred at locations in California.

---

[3] This action is presently in the United States District Court due to removal by Navient based on diversity of citizenship.

## BACKGROUND AND RELEVANT FACTS

*Art Institute and EDMC*

28. Art Institute of California – Orange County, was a fraudulent, scandal-ridden for-profit college. It was owned and operated by Argosy University and its parent, Education Management Corporation ("EDMC"), which was one of the largest for-profit education companies in the country prior to its bankruptcy in 2018.

29. Argosy, EDMC, and the Art Institutes have been subject to numerous investigatory and regulatory actions related to their predatory, high-pressure sales tactics, and their false and misleading representations used to convince students to enroll.

30. The U.S. Department of Education found that "[t]he Art Institutes targeted individuals for enrollment who would be particularly susceptible to promises of better employment and increased earnings—such as individuals with low socioeconomic status and homeless individuals."

*Mr. Albanese's Experience at Art Institute of California*

31. Mr. Albanese attended the Art Institute of California – Orange County from October 2005 to September 2008. He attended a bachelor of science program for industrial design.

32. Mr. Albanese was induced to enroll in the Art Institute, and to take on private student debt through fraud and misrepresentations by Art Institute recruiters, including misrepresentations about the cost of the program, his loan obligations, the salaries of its graduates, its career services, and his job prospects.

33. The false claims made by the AIOC enrollment department led Mr. Albanese to believe that he would graduate with job security and a salary that would allow him to repay the loans he was pushed to take out. AIOC

recruiters presented exaggerated claims about job placement rates. They falsely assured Mr. Albanese that graduates had a high success rate in securing employment in the industrial design field. They painted an unrealistic picture of financial success, inflating potential starting salaries to levels that were far beyond what was attainable.

34. These inflated expectations led Mr. Albanese to believe that the substantial investment in tuition would pay off quickly and easily. Instead, Mr. Albanese, like most other graduates, found himself struggling to make ends meet after graduation.

35. AIOC recruiters misrepresented that the curriculum was rigorous, industry-relevant, and comparable to the best in the field. In reality, the Industrial Design program was underdeveloped and lacked the depth and substance Mr. Albanese had been promised. The program was so new that many of the "faculty" members were unqualified, underperforming, and uninterested in providing the mentorship necessary to succeed in the industry.

36. Mr. Albanese rapidly discovered that the Art Institute was not there to teach students but instead to gain profit. AIOC Director Alan Cosolitto and AIOC instructors openly told Mr. Albanese and the other students they would not teach him or answer his questions because the instructors felt the students would be their competitors upon graduation.

37. Mr. Albanese was also told by an instructor that they could not fail anyone as AIOC needed to keep students enrolled in order to continue collecting their tuition money.

38. AIOC falsely represented to Mr. Albanese that it had vast industry connections. He was told that the school had partnerships with top companies, offering valuable internship and job placement opportunities. Yet, in reality, these so-called partnerships were largely non-existent. The

First Amended Complaint

few opportunities actually provided were limited, poorly managed, and ultimately not beneficial in advancing Mr. Albanese's career.

39. Contrary to promises made by AIOC recruiters, the career services department was virtually nonexistent. Mr. Albanese was left with no guidance or help in securing employment, despite repeated attempts to seek job placement assistance. Mr. Albanese was unable to secure a job in the industrial design field after graduation. Mr. Albanese struggled for years doing odd jobs and gig work, trying to make his loan payments.

*Private Student Loans*

40. Navient is a successor entity to Sallie Mae. Sallie Mae knew, and Navient knows, that the Art Institutes had high rates of loan default, and that those schools were defrauding students who attended. Nonetheless, Sallie Mae and for-profit schools engaged in backroom deals to ensure that both companies still made vast profits at the expense of students who were left with fraudulent private and federal student loan debt and worthless degrees. Those fraudulent private loans, including the loans alleged to be owed by Mr. Albanese, were later assigned to and serviced by Navient after Navient spun off from Sallie Mae.

41. Many students take out private student loans to supplement, or in some cases replace, federal aid. Private student loans are not guaranteed by the federal government, often have much higher interest rates than federal loans, and generally lack affordable or flexible repayment plans.

42. There was a thriving third-party private student lending market led by Navient while it was operating as Sallie Mae around the time Mr. Albanese enrolled at AIOC. Sallie Mae had an established business practice of pushing subprime loans on students who attended for-profit colleges,

First Amended Complaint

knowing that those borrowers would likely default and face severe consequences, but without informing student borrowers of this risk.

43. Many schools maintained a "preferred lender" list to direct students to the company's lenders of choice. Because a lender at the top of a school's list received up to 90% of the school's total student loan volume, Sallie Mae pursued an aggressive strategy to reach the top of these preferred lending lists in order to obtain near-exclusive access to profitable federal lending business at those schools.

44. In return, Sallie Mae agreed to provide subprime, predatory private loans to fill the gap between the high cost of tuition at these predatory schools, including AIOC, and federal loan limits. These destined-to-fail private loans were used by Sallie Mae as a "loss leader" product to gain access to borrowers for federally-guaranteed loans, which guaranteed Sallie Mae a profit.

45. AIOC not only needed the private loans to fill the gap, but it also needed students to take out private loans to help schools meet the Higher Education Act's "90-10" rule, which requires for-profit schools to derive at least ten percent of revenue from non-federal loans to participate in the federal loan program, which Sallie Mae was able to provide.

46. Many of the private student loans Sallie Mae made to for-profit school students contained hallmarks of predatory mortgage loans, including exorbitant interest rates and fees and little or no underwriting standards. For example, Mr. Albanese's alleged private student loans had variable rates, with most starting repayment rates above 13%.

47. Navient's predecessor Sallie Mae knew that thousands of students were lied to and misled by AIOC, just to boost attendance at their predatory school.

Nonetheless, both companies proceeded with the fraud because it was a mutually beneficial relationship.

48. Mr. Albanese experienced these very tactics. Once Mr. Albanese was admitted to the Art Institute, an AIOC-associated loan broker steered him to take out private student loans with Sallie Mae. No one explained to Mr. Albanese the consequences of taking out private student loans or gave him alternatives. Instead, Sallie Mae chose the loans that best suited their interests, not his.

49. In 2022, Navient reached a settlement with multiple state Attorneys General, including California, relating to its servicing and collection of Sallie Mae loans from predatory for-profit schools where Sallie Mae knew at the time of origination that the loans were likely to fail, but used them as a "loss leader" to obtain preferred lender status for federally-guaranteed loans. Pursuant to the settlement, Navient agreed to discharge over $1 billion of private student loans originated for attendance at schools with credible allegations of wrongdoing, including AIOC. However, Navient only agreed to discharge private loans that were defaulted and charged off. Those borrowers, like Mr. Albanese, who had struggled to stay current on the loans despite their fraudulent origins, received no relief.

*FTC's Holder Rule*

50. The Federal Trade Commission's long-standing Rule on Preservation of Consumers' Claims and Defenses (referred to as the "Holder Rule") provides a path to relief for all consumers, including student borrowers. The Holder Rule prevents creditors from profiting from illegal consumer practices while insulating themselves from consumer claims and defenses against sellers. The Holder Rule allows consumers to raise seller-related claims against any holder of their credit agreements by requiring all covered

First Amended Complaint

entities, including for-profit colleges, to include the following language in every credit agreement:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. *See* 16 C.F.R. § 433.2; *see also* 40 Fed. Reg. 53,506, 53,524 (Nov. 18, 1975).

51.   Through the Holder Rule, student loan borrowers can assert any claim or defense that they could assert against the school against any "holder" of their private student loans.

52.   Mr. Albanese's alleged private student loan notes contain or should contain the Holder Rule language.

53.   Navient and MOHELA know that Mr. Albanese's alleged loans were induced through fraud because Mr. Albanese has stated this clearly, unequivocally, and repeatedly for years. For most of that time, Navient falsely told Mr. Albanese his loans do not meet the requirements for discharge based on misconduct by AIOC. These statements ignored and abrogated the FTC Holder Rule.

*Navient and MOHELA Are Employing Well-Known Illegal Tactics*

54.   In addition to the lawsuit discussed above brought by state Attorneys General, Navient and MOHELA's federal regulator has indicated it may be a violation of consumer protection laws to disregard well-known school misconduct and continue collecting on private loans from notoriously fraudulent schools.

First Amended Complaint

55. In its October, 2022, "Report of the CFPB Education Loan Ombudsman,"[4] the federal Consumer Financial Protection Bureau discussed private student loan creditors and servicers (like Defendants) continuing to collect loans from notoriously fraudulent schools like AIOC.

56. The CFPB Report notes that "holders and servicers of private loans associated with predatory for-profit schools continue to collect on these debts despite significant evidence of fraud and abuse in the practices that originated these loans, including in findings reached by state and federal governmental agencies." *Id*., 38.

57. The CFPB Report further notes that "private loan holders sometimes respond to borrower requests for accommodation or recourse [based on school misconduct] by stating that no discharge is available." *Id*.

58. The CFPB Report states that "[l]enders and servicers that deny the possibility of recourse, without taking into consideration the protections afforded to borrowers under applicable state or federal law and the borrower's experience with the school, might abrogate the terms of their own promissory notes and engage in deceptive acts or practices." *Id*., 39.

59. Indeed, "where there are government findings of fraud and abuse at an educational institution sufficient to bring an enforcement action or undergird a discharge of federally-held debt, **it is difficult to imagine how a holder could make a credible determination that such fraud and abuse has no relationship to the private student loans originated to finance the same education on behalf of the same students**." *Id*., 40 (emphasis added).

---

[4] Available at https://files.consumerfinance.gov/f/documents/cfpb_education-loan-ombudsman_report_2022-10.pdf (last accessed January 6, 2026).

60. In its recommendation for "[p]rotecting borrowers with private student loans originated to attend predatory schools," the CFPB Report stated that "holders and servicers are on **abundant notice** that borrowers saddled with these debts have defenses to repayment." *Id*., 54 (emphasis added).

*Navient School Misconduct Discharge*

61. Mr. Albanese carries a substantial load of private debt because of attending AIOC—debt previously serviced by Navient and now serviced by MOHELA.

62. Despite the fact that Mr. Albanese repeatedly notified Navient that his private student loans were the result of fraud, Navient consistently (and falsely) told Mr. Albanese that this fact had no bearing on his obligations. In fact, Mr. Albanese has always been entitled to raise school fraud as a defense to enforcement of the private loans.

63. On or around January 30, 2024, students with Navient-held student loans began to receive School Misconduct Discharge Applications from Navient. Yet, Mr. Albanese did not receive an application until June, 2024.

64. As described in the application itself, Navient's "School Misconduct Discharge Application" is supposed to evaluate borrowers' claims that their loans were induced through fraud, like those described in the CFPB Report.

65. In late June 2024, when Mr. Albanese finally received the School Misconduct Discharge Application, he filled out the form in great detail and submitted it to Navient on or around July 8, 2024.

66. The twelve-page application asks borrowers to attest to whether they were subject to various types of school misconduct, including, but not limited to: misrepresentations about employment prospects; misrepresentations or omissions about the availability of career services; misrepresentations about the ability to transfer credits to or from other schools; misrepresentations or

omissions about educational support services; misrepresentations or omissions about the program costs and/or the nature of loans; and aggressive and/or deceptive recruitment and enrollment practices.

67. Of the 42 categories of misconduct listed in the Navient School Misconduct Discharge Application, Mr. Albanese indicated that 37 of these 42 categories applied to his experience with AIOC. The misconduct that Mr. Albanese experienced comports with the Department of Education's findings that The Art Institutes' misconduct "negatively affected all or nearly all students" who enrolled during the period when Mr. Albanese enrolled.

68. At the end of the application, student borrowers must certify "under penalty of perjury" that the information they provided is "true and complete." Although the application requests substantial detailed information from student borrowers, it provides little information about Navient's process for reviewing the application. A letter accompanying the application indicates that it may take up to 30 days before student borrowers receive a discharge decision. But Navient's application leaves students in the dark about key parts of the process, including the weight given to each component of the application, whether there is anyone at Navient they can discuss the process with, who conducts a review of their application, and whether there is a timeframe within which they must apply to be eligible.

69. On September 19, 2024, Navient summarily denied Mr. Albanese's School Misconduct Discharge Application with respect to all four of his alleged private student loans. Navient provided no explanation for the denial. The only cursory comment they gave was that "Navient carefully considers a variety of factors in determining whether a private loan should be

discharged based on school misconduct and you do not meet the requirements for discharge based on misconduct by your school."

70. In October 2024, Navient transferred servicing of Mr. Albanese's alleged private student loans to MOHELA.

71. On information and belief, Navient's original application and process were transferred wholesale to MOHELA around fall 2024. MOHELA now offers an identical School Misconduct Discharge Application, but on its own letterhead instead of Navient's.

72. In early 2025, Mr. Albanese submitted a new School Misconduct Discharge Application with additional documentation to MOHELA.

73. On April 11, 2025, MOHELA summarily denied Mr. Albanese's new School Misconduct Discharge Application without explanation and giving no indication it had reviewed the additional documents he submitted.

74. The relief offered by this "application" was illusory for Mr. Albanese— despite being in exactly the situation described in the CFPB Report, with federal loans discharged due to widespread school fraud and private loans originated in the same circumstances, Navient and MOHELA have repeatedly denied Mr. Albanese's applications without providing any reason.

75. On November 12, 2024, Mr. Albanese submitted a complaint to the Consumer Financial Protection Bureau detailing Navient's wrongful denial of his School Misconduct Discharge Application. MOHELA responded, stating merely that the "analysis is confidential and proprietary," but that they had "confirmed that [Mr. Albanese's] application was validly denied" without explaining how or why.

76. It appears Navient created the application only to appear to have a compliant process, but without conducting a good faith evaluation of borrower claims.

77. On information and belief, both Navient and MOHELA adjudicate school misconduct discharge applications in arbitrary and unfair manners, including by employing secret criteria wholly unrelated to the merits of the claims and defenses articulated in the application. As such, Navient and MOHELA have misled, and continue to mislead, Mr. Albanese, other borrowers, regulators, and the general public about the availability and good faith administration of school misconduct discharge applications.

*Mr. Albanese's Right to Assert a School Misconduct Defense*

78. As a result of Navient and MOHELA's continued unjustified attempts to collect on Mr. Albanese's alleged private student loans, Mr. Albanese faces imminent threat that MOHELA, or another servicer or agent of the creditor, could take legal action to collect.

79. If Navient or MOHELA sued Mr. Albanese for collection, he would be able to raise defenses including those related to AIOC's legal violations per the FTC Holder Rule. But Mr. Albanese should not have to wait to be sued in order to get a determination on the validity of his alleged private loan debt.

80. The existence of Mr. Albanese's private loans—as well as the Defendants' actions to deny liability and to continue to collect on the loans—inflicts injury to Mr. Albanese every day. His balance for these alleged loans has ballooned based on the very high interest rates. Mr. Albanese has suffered and continues to suffer financial harm, harm to his credit, and emotional distress.

*Navient and MOHELA Have Failed as Servicers and Committed Other Collection Violations*

81. As Mr. Albanese has attempted over and over again to convey to Navient, and then MOHELA, that his loans were induced through fraud and should be discharged, both Navient and MOHELA have engaged in unfair, abusive, and unlawful collection tactics, including causing Mr. Albanese's phone to ring excessively in order to harass or annoy him, and communicating with third parties about the debt he allegedly owes.

82. Specifically, during periods within the three years preceding initiation of this action, Navient has called Mr. Albanese's cell phone more than ten times per day, sometimes calling him back-to-back-to-back.

83. During periods within one year preceding initiation of this action, MOHELA has called Mr. Albanese's phone at a frequency meant to harass or abuse him, including more than twenty times per week, also sometimes making multiple calls within minutes of each other.

84. These phone calls from both Navient and MOHELA have been so frequent as to be harassing and constitute abusive collection conduct.

85. Not content only to harass Mr. Albanese, Navient has also communicated with third parties about the debt they allege he owes. This included, within the three years preceding this action, leaving a voicemail for Mr. Albanese's minor niece.

86. Hence Navient has unlawfully communicated with third parties about the debt it alleges Mr. Albanese owes. These communications are not merely for the sake of locating Mr. Albanese.

87. In addition, Mr. Albanese has submitted numerous "qualified written requests" as defined in Civil Code § 1788.100(o), and telephonic "qualified requests" as defined in Civil Code § 1788.100(n), to both Navient and MOHELA, including requests for information such as complete loan contracts and the identity of the creditor. This includes but is not limited to

22
First Amended Complaint

requests to both Navient and MOHELA in March, 2025, and in June, 2025. Navient and MOHELA have both failed to respond to these requests, and have refused to provide Mr. Albanese with the information he requested.

88.    Navient and MOHELA have also erred by ignoring and denying Mr. Albanese's school misconduct discharge application, and by collecting when the loans should be in forbearance and engaging in harassing and abusive phone call practices.

89.    Due to the violative conduct described herein, Mr. Albanese has suffered damages and lost money or property.

90.    Mr. Albanese's injuries include, but are not limited to, the toll this situation has taken on him, the negative impact it has had on his ability to enjoy his life, the physical manifestations of that negative impact, the damage to his credit, the embarrassment of having Defendants call his friends and family, the alleged outstanding obligation Defendants claim he owes, the money he has paid to dispute the loans, and the money he has paid toward the loans.

## FIRST CAUSE OF ACTION
### Student Borrower Bill of Rights
### (Against all Defendants)

91.    Mr. Albanese brings the first cause of action against Defendants under the Student Borrower Bill of Rights ("SBBR"), California Civil Code §§ 1788.100-105.

92.    Mr. Albanese realleges and incorporates by reference herein all of the allegations set forth above.

93.    Mr. Albanese is a "borrower" as that term is defined by Civil Code § 1788.100(a).

94.    The loans that Defendants claim Mr. Albanese owes are "student loans" as defined by Civil Code § 1788.100(q).

95.    Defendants are "student loan servicers" as that term is defined by Civil

Code § 1788.100(s).

96. Defendants' conduct alleged herein constitutes abusive acts or practices in violation of Civil Code § 1788.101(a). This abusive conduct includes but is not limited to:

    a. Materially interfering with Mr. Albanese's ability to understand the terms and conditions of his student loans;

    b. Taking unreasonable advantage of Mr. Albanese's inability to protect his interests when using features, terms, and conditions of his student loans, e.g., encouraging him to apply for discharge and then arbitrarily denying his application;

    c. Repeatedly and incessantly calling Mr. Albanese's phone; and

    d. Communicating with Mr. Albanese's friends and family about the student loans.

97. By representing to Mr. Albanese that AIOC's fraud has no bearing on his obligations on the loans, Defendants, through unlawful conduct, misrepresented and omitted material information to Mr. Albanese causing him to misunderstand and fail to exercise his rights.

98. By summarily, arbitrarily, and without good faith denying Mr. Albanese's school misconduct discharge application, Defendants engaged in conduct that substantially interfered with Mr. Albanese's right to loan cancellation or discharge.

99. Defendants' conduct alleged herein violates Civil Code § 1788.101(b) because Defendants:

    a. Directly or indirectly employed a scheme, device, or artifice to defraud or mislead Mr. Albanese, including by first misrepresenting whether AIOC's fraud gave Mr. Albanese any options, and then by

inducing him to fill out a school misconduct discharge application only to summarily deny it; and

b. Engaged in unfair and deceptive practices toward Mr. Albanese and misrepresented and omitted material information in connection with servicing student loans, including misrepresenting the terms and conditions of the loan agreements and Mr. Albanese's obligations under the loans.

100. Defendants' conduct alleged herein also violates Civil Code §§ 1788.102(i), 1788.102(j), and 1788.102(t) by failing to treat Mr. Albanese's qualified requests as qualified written requests, failing to provide the information requested, failing to address the errors identified, and failing to provide an escalation process for borrowers who are dissatisfied with the results of their qualified requests.

101. On or around June 7, 2025, Mr. Albanese sent letters to Navient and MOHELA, by certified mail with return receipt requested and addressed to Navient's and MOHELA's addresses on file with the California Department of Financial Protection and Innovation, informing Navient and MOHELA of how their conduct toward Mr. Albanese violated the Student Borrower Bill of Rights, and demanding a correction and remedy (the "Notice Letter").

102. Mr. Albanese's Notice Letter satisfied the notice requirement in California Civil Code § 1788.103(d).

103. More than 30 days have elapsed since Navient and MOHELA's receipt of Mr. Albanese's Notice Letter, and neither have given nor offered an appropriate correction or remedy for the violations set forth in that letter.

104. As a result of Defendants' violations of the SBBR, Mr. Albanese is entitled to an order enjoining the violative methods, acts, or practices as to himself

and as to the general public pursuant to Civil Code § 1788.103(b)(2).

105. Mr. Albanese seeks an injunction on behalf of the general public to prevent Defendants from continuing their unlawful conduct as to the general public as alleged herein. Specifically, Mr. Albanese seeks a public injunction requiring that Navient and MOHELA conduct good faith evaluations of borrower claims of school misconduct, that Navient and MOHELA implement policies and procedures to ensure that they provide timely and complete responses to borrower qualified written requests for information and notices of error under the Student Borrower Bill of Rights, and that Navient and MOHELA implement policies and procedures to prevent harassing and abusive telephone calls as well as unlawful debt collection contacts with third parties. This relief will benefit not only Mr. Albanese, and not only those with loans currently serviced by Defendants, but also the general public, including those who may have loans serviced by Defendants in the future and those who may be unlawfully contacted by Defendants in the future.

106. As a result of Defendants' violations of the SBBR, Mr. Albanese is entitled to an award of actual damages to be proven at trial, but in no case less than five hundred dollars ($500) per violation, pursuant to Civil Code § 1788.103(b)(1).

107. As a result of Defendants' substantial interference with Mr. Albanese's right to loan cancellation or discharge, Mr. Albanese is entitled to an award of treble his actual damages and in no case less than one thousand five hundred dollars ($1,500) per violation, pursuant to Civil Code § 1788.103(c).

108. As a result of Defendants' violations of the SBBR, Mr. Albanese is entitled to an award of punitive damages pursuant to Civil Code § 1788.103(b)(4).

First Amended Complaint

109. As a result of Defendants' violations of the SBBR, Mr. Albanese is entitled to an award of attorney's fees pursuant to Civil Code § 1788.103(b)(5).

WHEREFORE, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**
**Rosenthal Fair Debt Collection Practices Act**
**(Against all Defendants)**

110. Mr. Albanese brings the second cause of action against Defendants under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code §§ 1788-1788.33.

111. Mr. Albanese realleges and incorporates by reference herein all of the allegations set forth above.

112. Mr. Albanese is a "debtor" as that term is defined by Civil Code § 1788.2(h).

113. Defendants are each "debt collectors" as that term is defined by Civil Code § 1788.2(c).

114. The financial obligation alleged to be owed by Mr. Albanese is a "consumer debt" as that term is defined by Civil Code § 1788.2(f).

115. Through the conduct alleged above, Defendants have violated the RFDCPA. The violations include, but are not limited to, the following:

    a. Defendants caused Mr. Albanese's telephone to ring repeatedly and continuously to annoy him in violation of Civil Code § 1788.11(d);

    b. Defendants communicated with Mr. Albanese by telephone with such frequency as to be unreasonable and to constitute harassment under the circumstances in violation of Civil Code § 1788.11(e);

    c. Defendants engaged in conduct the natural consequence of which is to harass, oppress, and abuse Mr. Albanese in connection with the collection of a debt, including by causing his telephone to ring repeatedly and continuously with intent to annoy, abuse, or harass

him, in violation of Civil Code § 1788.17 (incorporating 15 U.S.C. §§ 1692d, 1692d(5));

d. Defendants made and used false, deceptive, and misleading representations in an attempt to collect the alleged debt from Mr. Albanese in violation of Civil Code § 1788.17 (incorporating 15 U.S.C. § 1692e);

e. Defendants misrepresented the character, amount, or legal status of the alleged debt in violation of Civil Code § 1788.17 (incorporating 15 U.S.C. § 1692e(2)(A)); and

f. Defendants contacted third parties and disclosed information about Mr. Albanese's alleged debts for purposes other than to locate Mr. Albanese in violation of Civil Code §§ 1788.12, 1788.17 (incorporating 15 U.S.C. § 1692c(b), 12 C.F.R. Part 1006.6(d)).

116. Defendants' violations alleged herein were committed willfully and knowingly.

117. As a result of Defendants' violations of the RFDCPA, Mr. Albanese is entitled to actual damages in an amount to be proven at trial, pursuant to Civil Code §§ 1788.30 and 1788.17 (incorporating 15 U.S.C. § 1692k(a)(1)).

118. As a result of Defendants' willful and knowing violations of the RFDCPA, Mr. Albanese is entitled to a penalty of not less than one hundred dollars ($100) or more than one thousand dollars ($1,000) pursuant to Civil Code § 1788.30(b).

119. As a result of Defendants' violations of the RFDCPA, Mr. Albanese is entitled to an award of statutory damages in an amount not to exceed one thousand dollars ($1,000) pursuant to Civil Code § 1788.17 (incorporating 15 U.S.C. § 1692k(a)(2)(A)).

120. As a result of Defendants' violations of the RFDCPA, Mr. Albanese is entitled to an award of reasonable attorney's fees and costs pursuant to Civil Code §§ 1788.30(c) and 1788.17 (incorporating 15 U.S.C. § 1692k(a)(3)).

121. Pursuant to Civil Code § 1788.32, the remedies provided under the RFDCPA are intended to be cumulative and in addition to any other procedures, rights, or remedies that Mr. Albanese may have under any other provision of law.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
### Consumer Credit Reporting Agencies Act
### (Against all Defendants)

122. Mr. Albanese brings the third cause of action against Defendants under the Consumer Credit Reporting Agencies Act ("CCRAA"), Civil Code §§ 1785.1-1785.36.

123. Mr. Albanese realleges and incorporates by reference herein all of the allegations set forth above.

124. Mr. Albanese is a "consumer" as that term is defined in Civil Code § 1785.3(b).

125. Defendants are "persons" as that term is defined in Civil Code § 1785.3(j).

126. Defendants furnished inaccurate and/or incomplete information about Mr. Albanese's obligation under the private student loans to one or more consumer credit reporting agencies. Namely, Defendants furnished information indicating that Mr. Albanese is undisputedly obligated to pay the loans even though Defendants knew the loans were induced through fraud, and even though Defendants knew that Mr. Albanese disputed the validity and collectability of the loans. At minimum, Defendants could have

furnished a code to consumer credit reporting agencies indicating that the loans are disputed, but Defendants failed to do so.

127. Defendants continued furnishing inaccurate and/or incomplete information after arbitrarily and without good faith denying Mr. Albanese's applications for loan discharge. Had Defendants evaluated his applications in good faith, they would have discharged the loans and accurately reported that Mr. Albanese owed nothing further. Instead, they denied the applications in bad faith and inaccurately reported that Mr. Albanese owed a large balance. Defendants also inaccurately reported the payment status of Mr. Albanese's alleged private student loans.

128. Defendants knew or should have known that the information they furnished was inaccurate and/or incomplete at the time they furnished it, and at all subsequent times when they allowed it to remain on Mr. Albanese's credit.

129. Defendants acted willfully in furnishing inaccurate and/or incomplete information about Mr. Albanese to one or more credit reporting agencies.

130. Alternatively, Defendants acted negligently in furnishing inaccurate and/or incomplete information about Mr. Albanese to one or more consumer credit reporting agencies.

131. As a result of Defendants' willful violations of the CCRAA, Mr. Albanese is entitled to an award of actual damages, including court costs, attorney's fees, and pain and suffering pursuant to Civil Code § 1785.31(a)(2)(A).

132. As a result of Defendants' willful violations of the CCRAA, Mr. Albanese is entitled to an award of punitive damages in an amount not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation pursuant to Civil Code § 1785.31(a)(2)(B).

133. As a result of Defendants' negligent violations of the CCRAA, Mr. Albanese is entitled to an award of actual damages, including court costs,

First Amended Complaint

attorney's fees, and pain and suffering pursuant to Civil Code § 1785.31(a)(1).

134. As a result of Defendants' violations of the CCRAA, Mr. Albanese is entitled to injunctive relief pursuant to Civil Code § 1785.31(b).

135. As a result of Defendants' violations of the CCRAA, Mr. Albanese is entitled to an award of court costs and attorney's fees pursuant to Civil Code § 1785.31(d).

WHEREFORE, Plaintiff prays for relief as set forth below.

### FOURTH CAUSE OF ACTION
### Unfair Competition Law
### (Against all Defendants)

136. Mr. Albanese brings the fourth cause of action for declaratory judgment against Defendants pursuant to the Unfair Competition Law ("UCL"), Business & Professions Code § 17200 *et seq.*

137. Mr. Albanese realleges and incorporates by reference herein all of the allegations set forth above.

138. The alleged debt, and collection of the alleged debt, is a "consumer financial product or service" as defined by California Financial Code §§ 90005(e), and 90005(k).

139. Defendants are each "covered persons" as defined in California Financial Code § 90005(f).

140. California law prohibits covered persons from engaging in any unfair, deceptive, or abusive act or practice with respect to a consumer financial product or service. Cal. Fin. Code § 90003(a)(1).

141. Defendants' actions alleged herein constitute unfair acts and practices that have caused Mr. Albanese substantial injuries that were not reasonably avoidable by him. Mr. Albanese's injuries are not outweighed by countervailing benefits to consumers or competition. Defendants' actions are

substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to the conduct.

142. Defendants' actions alleged herein constitute deceptive acts and practices because they include material misrepresentations and omissions likely to mislead, including misrepresentations of Mr. Albanese's obligations and discharge options given AIOC's misconduct and the fact that the loans were induced through fraud.

143. Defendants' actions alleged herein constitute abusive acts and practices because they take unreasonable advantage of Mr. Albanese's inability to protect his interests while using a consumer financial product or service—in this case while being subject to unfair and abusive debt collection activities on a debt that Defendants know was induced through fraud.

144. Defendants' actions alleged herein constitute fraudulent acts and practices because they involve false and misleading representations and omissions likely to deceive reasonable consumers.

145. Defendants' actions alleged herein violate numerous provisions of law, as set forth above, including:

- The Student Borrower Bill of Rights, Civil Code §§ 1788.100 – 1788.106;
- The Rosenthal Fair Debt Collection Practices Act, Civil Code §§ 1788 – 1788.33;
- The Consumer Credit Reporting Agencies Act, Civil Code §§ 1785.1 – 1785.36; and
- The Consumer Financial Protection Law, Financial Code §§ 90000-90019.

146. Defendants' actions constitute unlawful, unfair and fraudulent business practices in violation of the UCL.

First Amended Complaint

147. Mr. Albanese has lost money or property as a result of these practices. This includes but is not limited to payments made, credit damage suffered and credit opportunities lost as a result, ongoing liability for the alleged debt that should have been cancelled and is unenforceable, and postage paid to dispute the alleged debt and to request information that should have been provided.

148. In light of Defendants' violations of the UCL, Mr. Albanese seeks an injunction on behalf of the general public to prevent Defendants from continuing their unlawful conduct as to the general public as alleged herein. Specifically, Mr. Albanese seeks a public injunction requiring that Navient and MOHELA conduct good faith evaluations of borrower claims of school misconduct, that Navient and MOHELA implement policies and procedures to ensure that they provide timely and complete responses to borrower qualified written requests for information and notices of error under the Student Borrower Bill of Rights, that Navient and MOHELA implement policies and procedures to prevent harassing and abusive telephone calls as well as unlawful debt collection contacts with third parties, and that Navient and MOHELA cease furnishing inaccurate and/or incomplete information about private student loans that are discharged based on school misconduct.

149. Additionally, as a result of Defendants' violations of the UCL, Mr. Albanese is entitled to restitution, injunctive relief, and other equitable relief in order to remedy past harms and prevent future damages, for which there is no adequate remedy at law.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION
#### Declaratory Judgment
#### (Against all Defendants)

150. Mr. Albanese brings the fifth cause of action for declaratory judgment against Defendants pursuant to Code Civ. Proc. § 1060.

151.  Mr. Albanese realleges and incorporates by reference herein all of the allegations set forth above.

152.  A controversy exists between Mr. Albanese and Defendants as to whether the alleged private student debt Defendants have attempted to collect from Mr. Albanese is valid and enforceable, or whether it was induced through fraud and misrepresentations and is therefore not enforceable.

153.  Under the terms of the promissory note(s), which include or should have included language mandated by the Federal Trade Commission's Rule on Preservation of Consumers' Claims and Defenses, the holder of the loan(s) is subject to all claims and defenses that Mr. Albanese could bring against AIOC. *See* 16 C.F.R. § 433.2.

154.  Mr. Albanese has a reasonable apprehension of suit because Defendants continue demanding payments on the loans, and have suggested that they may take further action. For example, in the past year Mr. Albanese has received multiple written collection communications from MOHELA on behalf of Navient stating, *inter alia*:

    o  "Let us help you with your payment options before it's too late"
    o  "Your account is past due"
    o  "Immediate attention is needed regarding your account"

155.  Mr. Albanese seeks a declaration of his rights pursuant to Code of Civ. Proc. § 1060 that the alleged debt at issue was procured through fraud and misrepresentations, and that he has established a defense to his repayment obligations such that the private student loans at issue are not enforceable.

WHEREFORE, Plaintiff prays for relief as set forth below.

//

//

//

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

(1)    For an order enjoining Defendants from continuing their unlawful practices alleged herein as to the general public;

(2)    For an order enjoining Defendants from continuing their unlawful practices alleged herein as to Mr. Albanese individually;

(3)    For actual damages and compensatory damages in excess of the jurisdictional minimum of this court;

(4)    For statutory damages;

(5)    For punitive damages;

(6)    For treble damages pursuant to Civil Code § 1788.103(c);

(7)    For an order declaring that the debt Defendants seek to collect was induced through fraud and is therefore unenforceable;

(8)    For prejudgment interest at the maximum legal rate;

(9)    For an award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action; and

(10)   For such other and further relief as this Court shall deem just and proper.


Dated:  January 9, 2026                         **JUBILEE LEGAL**

                                  By:    */s/ Daniel "Sparky" Abraham*
                                         Daniel "Sparky" Abraham

                                         **AURORA LEGAL**
                                         P. Solange Hilfinger-Pardo

                                         Attorneys for Plaintiff Christopher
                                         Albanese

First Amended Complaint

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff demands a trial by jury on all issues so triable.


Dated: January 9, 2026                **JUBILEE LEGAL**


                          By:   <u>/s/ Daniel "Sparky" Abraham</u>
                                Daniel "Sparky" Abraham

First Amended Complaint